UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANDREW A. CEJAS,<br><br>                                        Plaintiff,<br><br>v.<br><br>ROBERT BROWN, California<br>Department of Corrections CMR;<br>FABRICE HADJADJ, Prison<br>Chaplain; J. DAVIES, AA/PIO;<br>and LT. P. COVELLO, Chief<br>Deputy Warden,<br><br>                                        Defendants. | Case No.:  18-cv-543-WQH-JLB<br><br>**ORDER** |

HAYES, Judge:

The matters before the Court are the Motion for Summary Judgment filed by Defendants F. Hadjadj, R. Brown, J. Davies, and P. Covello (ECF No. 74) and the Report and Recommendation issued by the Magistrate Judge (ECF No. 100) recommending that the Court grant Defendants' Motion for Summary Judgment.

## I.    BACKGROUND

On March 15, 2018, Plaintiff Andrew A. Cejas, a state prisoner proceeding *pro se* and *in forma pauperis*, filed a Complaint against Defendants F. Hadjadj, R. Brown, J. Davies, and P. Covello for violations of his federal civil rights under 42 U.S.C. § 1983. In

the Complaint, Plaintiff alleges that he has been a practitioner of the Buddhist faith for over ten years. Plaintiff alleges that the Buddhist faith mandates meditation, chanting, and prostration in an indoor setting. Plaintiff alleges that meditation must be learned from a master and requires personal supervision. Plaintiff alleges that on Facility D at the Richard J. Donovan Correctional Facility ("RJD"), where Plaintiff was housed[1], Buddhists are scheduled for weekly chapel access for services on Mondays from 9:20 a.m. to 11:30 a.m.

Plaintiff alleges that between 2016 and 2018, Defendants denied Buddhist inmates weekly chapel access when the supervising chaplain or a Buddhist volunteer failed to show up. Plaintiff alleges that Defendants failed to provide alternative supervision for the services, such as hiring a Buddhist chaplain or designating an inmate minister; failed to provide alternative indoor space when the chapel was unavailable; and favored other religions by allowing their followers weekly chapel access. Plaintiff alleges that Defendants imposed a substantial burden on the exercise of his Buddhist faith in violation of the First Amendment of the United States Constitution and the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), 42 U.S.C. § 2000cc, et seq. Plaintiff alleges that Defendants denied him equal protection of the laws in violation of the Fourteenth Amendment of the United States Constitution. Plaintiff seeks damages and declaratory and injunctive relief.

On April 5, 2019, Defendants filed an Answer to the Complaint. (ECF No. 37). The parties engaged in fact discovery.

On January 15, 2020, Defendants filed a Motion for Summary Judgment. (ECF No. 74). Defendants move for summary judgment on the three claims against them for violation of the First Amendment, RLUIPA, and the Fourteenth Amendment. Defendants assert that the lawsuit is barred by the doctrine of res judicata, the declaratory and injunctive relief

---

[1] Plaintiff was incarcerated at RJD when he filed the Complaint. On November 21, 2019, Plaintiff filed a Notice of Change of Address, notifying the Court that he was transferred to Avenal State Prison. (ECF No. 64).

claims are moot, Defendants succeed on the merits of the First Amendment, RLUIPA, and Fourteenth Amendment claims, and Defendants are entitled to qualified immunity.

On July 24, 2020, Plaintiff filed an Opposition to the Motion for Summary Judgment. (ECF No. 97).

On September 30, 2020, the Magistrate Judge issued a Report and Recommendation recommending that the Court grant Defendants' Motion for Summary Judgment. (ECF No. 100). The Report and Recommendation concludes that Defendants failed to establish that the lawsuit is barred by the doctrine of res judicata. The Report and Recommendation concludes that the RLUIPA claim and the requests for non-monetary relief under § 1983 are moot because Plaintiff is no longer incarcerated at RJD. The Report and Recommendation concludes that Defendants are entitled to summary judgment on the First and Fourteenth Amendment claims. The Report and Recommendation concludes that "Plaintiff [ ] raised a genuine dispute of material fact as to whether the failure to make available an indoor location for Buddhist services on a consistent weekly basis coerced Plaintiff to forego his sincerely held religious belief in weekly indoor group worship" (*id.* at 33), but concludes that Defendants are entitled to qualified immunity because "[t]here was no clearly established law at the time of Defendants' actions holding that failing to accommodate Plaintiff's religious practices in the manner and to the extent at issue here constitutes an unlawful, substantial burden on the free exercise of religion." (*Id.* at 100).

No party has filed an objection to the Report and Recommendation. The Court has reviewed the Report and Recommendation, the record, and the submissions of the parties. The district judge "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate." 28 U.S.C. § 636(b)(1).

## II.   FACTS

Plaintiff is a practitioner of the Buddhist faith. Plaintiff states in his Declaration that the Buddhist faith requires Plaintiff to "engage in mandatory weekly group assembly worship." (Cejas Decl., ECF No. 97 at 71).

18-cv-543-WQH-JLB

From 2014 to 2019, Plaintiff was housed on Facility D at RJD. Weekly Buddhist services were scheduled in the chapel on Facility D. The weekly Buddhist services were to be supervised by "brown card volunteers"—unescorted volunteers who provided at least six months of regular service to inmates. (Brown Interrog. Resps., ECF No. 97-2 at 67). If a volunteer was not available, Buddhist services were to be supervised by the Jewish Chaplain. Defendant Brown, the Community Resource Manager for RJD, recruited and worked with the brown card volunteers to provide weekly Buddhist services and assigned the Jewish Chaplain, Defendant Hadjadj, to supervise the services when a volunteer was unavailable.

RJD officials recorded the details of chapel services on the Weekly Report of Chapel Services for Facility D ("Weekly Report"). The parties submitted Weekly Reports for 146 weeks from July 2016 through May 2019.[2] Plaintiff also submitted copies of the RJD clerk's weekly sign-in sheets and Plaintiff's CDCR 22 form complaints, providing additional details of chapel services. Between July 25, 2016, and May 6, 2019, Buddhist services were held in the chapel on 99 weeks, approximately 68% of the 146 weeks during that period. When Buddhist services were cancelled, the cancellations were usually due to "no shows." (*See generally* ECF No. 97-1 at 1-103 (Weekly Reports listing "no show" as the reason for cancellation of services on 28 occasions)). Buddhist services were also cancelled on occasion for other reasons including holidays, no programs/services/lists from the program office, and bad weather. There are no Weekly Reports from January 1, 2016,

---

[2] Defendants and Plaintiff submit the Weekly Reports as evidence in support of their respective Motion and Opposition. Plaintiff objects to the Weekly Reports as unauthenticated and as inadmissible hearsay. (*See* ECF No. 90). A review of the contents of the Weekly Reports shows that the documents "appear to be sufficiently genuine" based on their distinctive characteristics. *Las Vegas Sands, LLC v. Nehme*, 632 F.3d 526, 533 (9th Cir. 2011) (citation omitted); *see* Fed. R. Evid. 901(b)(4). Further, the Declaration of the RJD Litigation Coordinator (ECF No. 96) is sufficient for the Court to conclude that Defendants could lay the requisite foundation at trial for the business records exception to the hearsay rule. *See* Fed. R. Evid. 803(6). Plaintiff's objections are overruled.

through July 25, 2016, but Plaintiff's CDCR 22 form records indicate that weekly services did not occur on four weeks during that 29-week period.

## III.   LEGAL STANDARD

"A party may move for summary judgment, identifying each claim or defense—or the part of each claim or defense—on which summary judgment is sought. The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A material fact is one that is relevant to an element of a claim or defense and whose existence might affect the outcome of the suit. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986). The materiality of a fact is determined by the substantive law governing the claim or defense. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-24 (1986).

The moving party has the initial burden of demonstrating that summary judgment is proper. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 153 (1970). Where the party moving for summary judgment does not bear the burden of proof at trial, "the burden on the moving party may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Celotex*, 477 U.S. at 325; *see also United Steelworkers v. Phelps Dodge Corp.*, 865 F.2d 1539, 1542-43 (9th Cir. 1989) ("[O]n an issue where the plaintiff has the burden of proof, the defendant may move for summary judgment by pointing to the absence of facts to support the plaintiff's claim. The defendant is not required to produce evidence showing the absence of a genuine issue of material fact with respect to an issue where the plaintiff has the burden of proof. Nor does Rule 56(c) require that the moving party support its motion with affidavits or other similar materials negating the nonmoving party's claim." (citations omitted)).

If the moving party meets the initial burden, the burden shifts to the opposing party to show that summary judgment is not appropriate. *See Anderson*, 477 U.S. at 256; *Celotex*, 477 U.S. at 322, 324. The nonmoving party cannot defeat summary judgment merely by demonstrating "that there is some metaphysical doubt as to the material facts." *Matsushita*,

475 U.S. at 586; *see Anderson*, 477 U.S. at 252 ("The mere existence of a scintilla of evidence in support of the [nonmoving party's] position will be insufficient."). The nonmoving party must "go beyond the pleadings and by her own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Celotex*, 477 U.S. at 324 (citations omitted). The nonmoving party's evidence is to be believed, and all justifiable inferences are to be drawn in its favor. *See Anderson*, 477 U.S. at 256.

## IV.   RES JUDICATA

Defendants contend that this lawsuit is barred by the doctrine of res judicata because Plaintiff settled past claims and waived future claims regarding his lack of access to Buddhist chapel services in *Cejas v. Brown, et al.*, Case No. 15-cv-949-WQH-MDD (S.D. Cal.) ("2015 Action"). Plaintiff contends that the settlement in the 2015 Action did not waive future claims regarding his lack of access to Buddhist chapel services on Facility D, and the parties in this case are not identical to, or in privity with, the parties in the 2015 Action.

On April 29, 2015, Plaintiff filed a civil rights action under 42 U.S.C. § 1983 against defendants R. Brown, W.O. Brown, F. Hadjadj, K. Seibel, G. Murphy, and R.L. Briggs, all of whom were state officials working at RJD.[3] Plaintiff alleged that from 2013 to 2015, the defendants violated Plaintiff's right to the free exercise of his Buddhist faith under the First Amendment, imposed a substantial burden on the exercise of his faith in violation of RLUIPA, and denied him equal protection of the laws under the Fourteenth Amendment. Plaintiff alleged that the defendants denied Buddhist inmates on Facilities C and D equal chapel access, failed to allow weekly Buddhist services, and failed to provide supervision for Buddhist services. Plaintiff further alleged that the defendants favored other religions

---

[3] Defendants request that the Court take judicial notice of four filings in the 2015 Action. (ECF No. 74-2). The Court takes judicial notice of the filings in the 2015 Action. *See Reyn's Pasta Bella, LLC v. Visa USA, Inc.*, 442 F.3d 741, 746 n.6 (9th Cir. 2006) (noting that courts "may take judicial notice of court filings and other matters of public record").

with guaranteed weekly services and chaplain supervision and failed to provide food at state expense for annual Buddhist holidays.

On May 4, 2016, the parties settled the 2015 Action. (2015 Action, ECF No. 28). On May 12, 2016, the parties signed a Stipulation for Voluntary Dismissal with Prejudice. (2015 Action, ECF No. 31). The Settlement Agreement covered "all of the claims and allegations in the Complaint [filed in the 2015 Action] and any amendments thereto against Defendants, whether named or unnamed and whether served or unserved, and any past or current employees of CDCR." (ECF No. 74-1 at 144). By signing the Settlement Agreement, Plaintiff agreed to release "CDCR, Defendants, whether named or unnamed and whether served or unserved, and any past or current CDCR employees from all claims, past, present and future, known or unknown, that arise or could arise from the facts alleged in the Complaint." (*Id.* at 145). Plaintiff expressly waived the provisions of section 1542 of the California Civil Code, which states: "A general release does not extend to claims which the creditor does not know or suspect to exist in his or her favor at the time of executing the release, which if known by him or her must have materially affected his or her settlement with the debtor." (*Id.*).

"The preclusive effect of a federal-court judgment is determined by federal common law." *Taylor v. Sturgell*, 553 U.S. 880, 891 (2008). Under federal common law, the doctrine of res judicata bars the re-litigation of claims previously decided on their merits. *See Headwaters, Inc. v. U.S. Forest Serv.*, 399 F.3d 1047, 1051 (9th Cir. 2005). "Res judicata, or claim preclusion, provides that a final judgment on the merits of an action precludes the parties from relitigating all issues . . . that were or could have been raised in that action." *Rein v. Providian Fin. Corp.*, 270 F.3d 895, 898-99 (9th Cir. 2001), *as amended on grant of reh'g*, 2001 U.S. App. LEXIS 23842 (Nov. 5, 2001). The elements necessary to establish res judicata are: "(1) an identity of claims, (2) a final judgment on the merits, and (3) privity between parties." *Headwaters*, 399 F.3d at 1052 (quoting *Tahoe-Sierra Pres. Council, Inc. v. Tahoe Reg'l Plan. Agency*, 322 F.2d 1064, 1077 (9th Cir. 2003)).

18-cv-543-WQH-JLB

In determining whether there is an identity of claims, the court considers the following factors:

> (1) whether rights or interests established in the prior judgment would be destroyed or impaired by prosecution of the second action; (2) whether substantially the same evidence is presented in the two actions; (3) whether the two suits involve infringement of the same right; and (4) whether the two suits arise out of the same transactional nucleus of facts. The last of these criteria is the most important.

*Id.* (alteration omitted) (quoting *Costantini v. Trans World Airlines*, 681 F.2d 1199, 1201-02 (9th Cir. 1982)); *see Int'l Union of Operating Eng'rs-Emp'rs Constr. Indus. Pension., etc. v. Karr*, 994 F.2d 1426, 1430 (9th Cir. 1994) (noting that "the factors cited in *Costantini* are 'tools of analysis, not requirements'" (quoting *Derish v. San Mateo-Burlingame Bd. of Realtors*, 724 F.2d 1347, 1349 (9th Cir. 1983))). The inquiry into whether two suits arise out of the same transactional nucleus of facts "is essentially the same as whether the claim could have been brought in the first action." *Turtle Island Restoration Network v. U.S. Dep't of State*, 673 F.3d 914, 918 (9th Cir. 2012) (quoting *United States v. Liquidators of European Fed. Credit Bank*, 630 F.3d 1139, 1151 (9th Cir. 2011)).

This action and the 2015 Action allege infringement of the same rights under the Free Exercise Clause of the First Amendment, the Equal Protection Clause of the Fourteenth Amendment, and RLUIPA. The 2015 Action was settled on May 4, 2016, and was closed on June 29, 2016. (*See* 2015 Action, ECF Nos. 28, 33). Plaintiff filed the 2015 Action based on events that occurred from 2013 to 2015. He did not allege facts or present evidence in the 2015 Action regarding violations in 2016 or later. Plaintiff's allegations in the present action only relate to the period from 2016 through 2018 and the present.

The evidence presented in this action is new and different from the 2015 Action and post-dates the settlement in the 2015 Action. The alleged violations by Defendants in this action could not have been brought in the 2015 Action because they had not yet occurred. The Court concludes that the two suits do not arise out of the same transactional nucleus of facts, and there is no identity of claims between this action and the 2015 Action.

Accordingly, Defendants have failed to establish that Plaintiff's complaint is barred by res judicata. *See Asetek Danmark A/S v. CMI USA Inc.*, 852 F.3d 1352, 1365 (Fed. Cir. 2017) ("It is well established . . . that the difference in timing means that the two situations do not involve the same 'claim' for claim-preclusion purposes, even if all the conduct is alleged to be unlawful for the same reason."); *accord Frank v. United Airlines, Inc.*, 216 F.3d 845, 851 (9th Cir. 2000) ("A claim arising after the date of an earlier judgment is not barred, even if it arises out of a continuing course of conduct that provided the basis for the earlier claim.").

## V.  DECLARATORY AND INJUNCTIVE RELIEF AND RLUIPA

Plaintiff seeks declaratory and injunctive relief specific to RJD in addition to money damages. (*See* ECF No. 1 at 34-36). Defendants contend that Plaintiff's transfer to Avenal State Prison in November 2019 moots his claims for non-monetary relief under § 1983 and his RLUIPA claim, because RLUIPA does not provide for awards of monetary damages against prison officials. Plaintiff contends that his claims for injunctive relief should not be dismissed because he will be transferred back to RJD for trial in *Cejas v. Paramo, et al.*, Case No. 14-cv-1923-TWR-WVG (S.D. Cal.), and possibly this case.

Generally, when an inmate is transferred, an individual claim for injunctive relief against the inmate's former prison becomes moot. *See Dilley v. Gunn*, 64 F.3d 1365, 1368 (9th Cir. 1995). The same is true for claims seeking declaratory relief, because the transferred inmate is no longer subject to the prison conditions or policies he challenges. *See Alvarez v. Hill*, 667 F.3d 1061, 1064 (9th Cir. 2012) (citing *Rhodes v. Stewart*, 488 U.S. 1, 2-4 (1988) (per curiam)). In this case, Plaintiff challenges the conditions at RJD, where he is no longer incarcerated. Plaintiff's claims under § 1983 for injunctive and declaratory relief and his RLUIPA claim are moot unless an exception to the mootness doctrine applies.[4]

---

[4] Injunctive relief, but not damages, are available under RLUIPA. *See Wood v. Yordy*, 753 F.3d 899, 901 (9th Cir. 2014) (holding that a plaintiff may not seek damages under RLUIPA against prison officials in

1    A claim that is "capable of repetition, yet evading review" is an exception to the

2    mootness doctrine. *Wiggins v. Rushen*, 760 F.2d 1009, 1011 (9th Cir. 1985) (citing *Roe v.*

3    *Wade*, 410 U.S. 113, 125 (1973); *S. Pac. Terminal Co. v. ICC*, 219 U.S. 498 (1911)). This

4    exception "is limited to extraordinary cases where two elements combine: (1) the

5    challenged action is of limited duration, too short to be fully litigated prior to its cessation

6    or expiration; and (2) there is a reasonable expectation that the same complaining party

7    will be subjected to the same action again." *Id.* (citations omitted). For a controversy to be

8    "too short to be fully litigated prior to cessation or expiration, it must be of *inherently*

9    limited duration." *Protectmarriage.com-Yes on 8 v. Bowen*, 752 F.3d 827, 836 (9th Cir.

10   2014) (citation omitted). "This is so because the 'capable of repetition, yet evading review'

11   exception is concerned not with particular lawsuits, but with classes of cases that, absent

12   an exception, would *always* evade judicial review." *Id.* (citation omitted). Cases are

13   "inherently limited in duration" when "they will only ever present a live action until a

14   particular date, after which the alleged injury will either cease or no longer be redressible."

15   *Id.*

16   In this case, the most recent Weekly Reports indicate that Buddhist services were

17   held on fourteen of seventeen available weeks from January to May 2019. There is no

18   reasonable expectation that Plaintiff will be subjected to the same action again if he is

19   transferred back to RJD. In addition, the nature of the claims here—that RJD officials

20   substantially burdened Buddhist inmates' religious practices—is not of inherently limited

21   duration. Plaintiff's claims for non-monetary relief under § 1983 and his RLUIPA claim

22   are moot. Defendants' Motion for Summary Judgment on the § 1983 declaratory and

23   injunctive relief claims and the RLUIPA claim is granted.

24   ///

25   ///

26

27

28   their individual capacities); *Holley v. Cal. Dep't of Corr.*, 599 F.3d 1108, 1114 (9th Cir. 2010) ("The
     Eleventh Amendment bars [the plaintiff's] suit for official-capacity damages under RLUIPA.").

## VI.   FIRST AMENDMENT - FREE EXERCISE CLAUSE

Defendants assert that they are entitled to summary judgment on the claim under § 1983 for violation of Plaintiff's free exercise rights. Defendants contend that the occasional cancellation of chapel access did not substantially burden Plaintiff's exercise of Buddhism or coerce him to violate his religious beliefs. Defendants contend that they provided Buddhist volunteers and regular weekly access to the chapel for Buddhist services. Defendants contend that when chapel was cancelled it was due to holidays, weather, security, and absences from volunteers. Defendants contend that the Free Exercise Clause does not require prison officials to provide a full-time Buddhist chaplain or regular Buddhist volunteers to avoid occasional cancellations.

Plaintiff contends that Defendants' failure to provide weekly Buddhist services forced Plaintiff to violate his Buddhist faith. Plaintiff contends that Defendants failed to provide weekly Buddhist services to allow Plaintiff to engage in the weekly group worship mandated by his Buddhist faith. Plaintiff asserts that it was Defendants' responsibility to guarantee supervision for weekly chapel worship by a full-time chaplain, Buddhist volunteer, officer, or inmate minister.

The Free Exercise Clause of the First Amendment "requires government respect for, and noninterference with, the religious beliefs and practices of our Nation's people." *Cutter v. Wilkinson*, 544 U.S. 709, 719 (2005). "Inmates clearly retain protections afforded by the First Amendment, including its directive that no law shall prohibit the free exercise of religion." *O'Lone v. Est. of Shabazz*, 482 U.S. 342, 348 (1987) (citations omitted). "A prisoner's right to freely exercise his religion, however, is limited by institutional objectives and by the loss of freedom concomitant with incarceration." *Hartmann v. Cal. Dep't of Corr. & Rehab.*, 707 F.3d 1114, 1122 (9th Cir. 2013) (citing *O'Lone*, 482 U.S. at 348).

"To merit protection under the free exercise clause of the First Amendment, a religious claim must satisfy two criteria." *Malik v. Brown*, 16 F.3d 330, 333 (9th Cir. 1994). First, an inmate must show that his religious belief is "sincerely held." *Id.* (quoting

*Callahan v. Woods*, 658 F.2d 679, 683 (9th Cir. 1981)). The "inquiry into sincerity . . . address[es] the sincerity with which the claimant holds the allegedly religious belief itself." *Callahan*, 658 F.2d at 683. "[C]ourts may not inquire into the truth, validity, or reasonableness of a claimant's religious beliefs." *Id.* at 685.

Second, the inmate must demonstrate that his claim is "rooted in religious belief, not in 'purely secular' philosophical concerns." *Malik*, 16 F.3d at 333 (quoting *Callahan*, 658 F.2d at 683). To be deeply rooted in religious belief, an inmate's claim need not be compelled by or central to his religion. *See Thomas v. Rev. Bd. of Ind. Emp. Sec. Div.*, 450 U.S. 707, 715-16 (1981) ("The guarantee of free exercise is not limited to beliefs which are shared by all of the members of a religious sect."). Instead, "[d]etermining whether a claim is 'rooted in religious belief' requires analyzing whether the [inmate]'s claim is related to his sincerely held religious belief." *Malik*, 16 F.3d at 333 (quoting *Callahan*, 658 F.2d at 683-84).

Once the inmate makes this initial showing, he must then establish that a prison official's actions "substantially burdens [the] practice of [his] religion." *Jones v. Williams*, 791 F.3d 1023, 1031 (9th Cir. 2015). "A substantial burden . . . place[s] more than an inconvenience on religious exercise; it must have a tendency to coerce individuals into acting contrary to their religious beliefs or exert substantial pressure on an adherent to modify his behavior and to violate his beliefs." *Ohno v. Yasuma*, 723 F.3d 984, 1011 (9th Cir. 2013) (quoting *Guru Nanak Sikh Soc'y of Yuba City v. Cty. of Sutter*, 456 F.3d 978, 988 (9th Cir. 2006) (alterations omitted)). "Prisons need only provide inmates with a 'reasonable opportunity' to worship in accord with their conscience." *Johnson v. Moore*, 948 F.2d 517, 520 (9th Cir. 1991) (quoting *Allen v. Toombs*, 827 F.2d 563, 569 (9th Cir. 1987)). Even when a prison policy or practice substantially burdens an inmate's religious exercise, it will not violate the First Amendment if the government can demonstrate that the policy or practice "is reasonably related to legitimate penological interests." *Turner v. Safley*, 482 U.S. 79, 89 (1987), *superseded on other grounds as stated in Warsoldier v.*

*Woodford*, 418 F.3d 989, 994 (9th Cir. 2005); *see also O'Lone*, 482 U.S. at 348-49; *Jones*, 791 F.3d at 1032.

In this case, Plaintiff is a practitioner of the Buddhist faith. Plaintiff states in his Declaration that the Buddhist faith requires Plaintiff to "engage in mandatory weekly group assembly worship." (Cejas Decl., ECF No. 97 at 71). Viewing the facts in the light most favorable to Plaintiff, a reasonable jury could conclude that Plaintiff has a sincerely held belief in weekly group assembly worship rooted in his Buddhist faith.

From 2014 to 2019, Plaintiff was housed on Facility D at RJD. Weekly Buddhist services were scheduled in the chapel on Facility D. Defendant Brown, the Community Resource Manager for RJD, recruited brown card volunteers to supervise the weekly Buddhist services and assigned the Jewish Chaplain, Defendant Hadjadj, to supervise on weeks when a volunteer was unavailable. Plaintiff has come forward with evidence that Buddhist services were cancelled on 51 out of the 175 weeks between January 1, 2016, and May 6, 2019. The occasional cancellations were due to volunteer "no shows," holidays, no programs/services/lists from the program office, and bad weather.

Intrusions that are "relatively short-term and sporadic" do not substantially burden an inmate's practice of their religion. *Canell v. Lightner*, 143 F.3d 1210, 1211-14 (9th Cir. 1998). The occasional cancellations of weekly Buddhist services in this case were unintentional and due to circumstances beyond prison officials' control. Prison officials reserved the chapel for weekly Buddhist services, appointed a chaplain, obtained volunteers, and provided Plaintiff an opportunity to attend services on most occasions. Plaintiff has not come forward with evidence that RJD's failure to provide a weekly Buddhist service on some occasions denied him a "reasonable opportunity" to exercise his faith. *Johnson*, 948 F.2d at 520 (quoting *Allen*, 827 F.2d at 569). The Court concludes that Plaintiff has failed to come forward with evidence that prison officials' actions substantially burdened the practice of Plaintiff's Buddhist faith. Defendants' Motion for Summary Judgment on the free exercise claim is granted.

///

## VII.   FOURTEENTH AMENDMENT - EQUAL PROTECTION CLAUSE

Defendants contend that they did not discriminate against Buddhist inmates by occasionally cancelling Buddhist chapel services. Plaintiff contends that inmates of other faiths could attend services with or without supervision by Defendants. Plaintiff contends that Defendants Covello and Davies failed to prevent the cancellation of Buddhist services. Plaintiff contends that Defendant Hadjadj refused to supervise Buddhist services because it was not his religious faith.

The Equal Protection Clause of the Fourteenth Amendment prohibits states from denying any person the equal protection of the laws, with the general objective "that all persons similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985). A viable equal protection claim under § 1983 requires a prisoner to show that the defendant acted with an intent or purpose to discriminate against the prisoner based on membership in a protected class. *See Lee v. City of Los Angeles*, 250 F.3d 668, 686 (9th Cir. 2001) (citing *Barren v. Harrington*, 152 F.3d 1193, 1194 (9th Cir. 1998)). The "intent" component of a discrimination claim requires the prisoner to demonstrate that "the defendant acted at least in part because of [the prisoner]'s protected status." *Serrano v. Francis*, 345 F.3d 1071, 1082 (9th Cir. 2003).

In the religious exercise context, "[p]risoners enjoy religious freedom and equal protection of the law subject to restrictions and limitations necessitated by legitimate penological interests." *Freeman v. Arpaio*, 125 F.3d 732, 737 (9th Cir. 1997) (citing *Bell v. Wolfish*, 441 U.S. 520, 545-46 (1979)), *overruled on other grounds by Shakur v. Schiro*, 514 F.3d 878, 884-85 (9th Cir. 2008). "[P]rison officials cannot discriminate against particular religions," and "must afford an inmate of a minority religion 'a reasonable opportunity of pursuing his faith comparable to the opportunity afforded fellow prisoners who adhere to conventional religious precepts.'" *Id.* (quoting *Cruz v. Beto*, 405 U.S. 319, 322 (1972) (per curiam)). However, the Equal Protection Clause does not require that all prisoners receive identical treatment and resources. *See Hartmann*, 707 F.3d at 1123. "[P]risons need not provide identical facilities or personnel to different faiths[.]" *Freeman*,

14

125 F.3d at 737 (citation omitted). Rather, prisons "must make 'good faith accommodation of the [prisoners'] rights in light of practical considerations.'" *Id.* (alteration in original) (quoting *Allen*, 827 F.2d at 569). To defeat summary judgment on a religious discrimination claim, the prisoner must set forth specific facts showing that there is a genuine dispute "as to whether he was afforded a reasonable opportunity to pursue his faith as compared to prisoners of other faiths and that such conduct was intentional." *Id.*

In this case, Plaintiff asserts that Defendants intentionally discriminated against Buddhists by failing to provide weekly chapel access and by failing to provide chaplain supervision every week, as compared to other similarly situated religious groups. Based on the review of the Weekly Reports, the Court finds that there is nothing to substantiate Plaintiff's claim of discrimination. There does not appear to be a single week where every religious group but Buddhists received services. (See ECF No. 74-1 at 4-159). Moreover, cancellations for "no shows," "no clerks," "not scheduled," "no program," and holidays occurred across all religions. Plaintiff has not set forth specific facts showing that there is a genuine dispute "as to whether he was afforded a reasonable opportunity to pursue his faith as compared to prisoners of other faiths." *Freeman*, 125 F.3d at 737. Defendants' Motion for summary judgment on the equal protection claim is granted.

## VIII. CONCLUSION

IT IS HEREBY ORDERED that the Report and Recommendation (ECF No. 100) is not adopted.

IT IS FURTHER ORDERED that The Motion for Summary Judgment filed by Defendants F. Hadjadj, R. Brown, J. Davies, and P. Covello (ECF No. 74) is granted. The Clerk of the Court shall enter judgment in favor of Defendants and against Plaintiff and close the case.

Dated:  March 1, 2021

Hon. William Q. Hayes
United States District Court

15